OPINION. Fisher, Judge: The petitioner contends that its business was depressed during the base period by the prolonged drought which prevailed over its trade area; that because of such depression its base period earnings are not an adequate measure of its normal earnings; that the drought was of sufficient severity and duration to constitute a “qualifying factor” under the provisions of section 722 (b) (1) or 722 (b) (2), or both; and that its base period earnings should be reconstructed to a normal level by restoring the estimated drought losses to the base period income. We have found as a fact that during the base period years there was a severe drought over petitioner’s entire trade area, and that the drought, and, to a lesser extent, insect infestation[1] during a portion of the base period, did adversely affect petitioner’s base period earnings to such an extent that the average of such earnings is an inadequate standard of normal earnings (see Finding 24 above). In our opinion, this Finding is amply supported by the record. Respondent recognizes that there was such a drought and that it resulted in a substantial curtailment of farm income throughout petitioner’s trade area. In its excess profits tax returns for the taxable years 1944,1945, and 1946, petitioner computed its excess profits credits by the invested capital method. Respondent makes the following contentions: a. That petitioner has failed to meet the burden of proving the extent to which its base period earnings were affected by the circumstances upon which it relies as a qualifying event; and b. That petitioner has failed to meet the burden of establishing a constructive average base period net income which would entitle it to a credit in excess of that allowed by use of the invested capital method; or, c. If we hold that petitioner has met the burdens indicated in a and b above, its constructive average base period net income should be in an amount substantially less than it has asserted. We agree with respondent only in his contention referred to in paragraph c above. We have already expressed the view that, upon the record, the drought, and, to a lesser extent, the insect infestation, adversely affected petitioner’s base period earnings to such an extent that its average of base period earnings is an inadequate standard of normal earnings within the meaning of section 722 of the Code. Coming to the more specific issues raised in relation to the burden of proof, we infer from respondent’s brief that he takes the position that petitioner must establish a precise figure representing a fair and just amount of normal earnings for its base period, and that failure to establish such an amount with exactitude is equivalent to a failure to meet the burden of proof. We do not accept that viewpoint. It is our view, limiting ourselves to the particular problem, that it is sufficient for minimal requirements if petitioner has introduced into the record acceptable proof on the basis of which we are able to determine normal earnings in an amount which is fair and just within the limits of a reasonable range of the exercise of judgment. We are not required to choose between adopting petitioner’s precise reconstruction on the one hand, or holding that it has failed to meet the burden of proof on the other. We may, likewise, upon the record, accept or reject a reconstruction offered by respondent, but we are not required to accept or reject in toto. Finally, we may determine a reconstruction, based upon the facts we find in the record, in an amount independent of that urged by either petitioner or respondent. We add that the exercise of judgment, upon the record, and within a reasonable range, in determining constructive average base period net income, is appropriate and necessary to a realistic approach in many cases arising under section 722 of the Code, including the case before us. ] In the instant case we are presented with numerous calculations, computations, analyses, and charts, with supporting data, offered by the respective parties. We find ourselves in the position of being unable to accept any of them as in themselves determinative of the amount of normal earnings of petitioner for its base period, because in each instance, one or more of the premises on which it is based is here inapplicable. Nevertheless, they have their use in aiding us to reach the proper perspective, and in checking and weighing our own views. It is our opinion that there is sufficient credible evidence in the record to enable us to ascertain the minimum extent to which petitioner’s earnings were depressed by the events constituting qualifying factors, and to determine normal earnings within a reasonable range. The two are, of course, interrelated. Both parties agree that of the many suggested approaches to a determination of normal earnings in this case, the soundest technique would be to reconstruct a reasonable sales figure for the base period, and to apply thereto a ratio of profit which would likewise be reasonable under the circumstances. Agreement ends with the statment of the underlying principle. Petitioner suggests that reconstructed sales be fixed at $919,201.02, to which should be applied a ratio or 5 per cent in order to determine normal earnings. Respondent suggests that normal average base period sales should be put at $667,424 and that preferably the ratio to be applied should be 1.65 per cent, or, in any event, not more than 2 per cent. In reaching our own conclusion, we accept the approach of reconstruction of sales and the application thereto of an appropriate profit ratio. We have, however, considered the entire record, the proposed findings of fact, and the briefs of the parties. A detailed consideration here of each of the contentions is unnecessary and would unnecessarily protract our opinion. We mention, therefore, only the main factors which we have considered, although our determination has been tempered by a consideration of all that has been presented. We begin by a consideration of the actual experience of the predecessor partnership. Our findings of fact include actual sales, gross profits, expenses, and net income (or loss) of the business and its predecessors for the years beginning with 1922 and ending with the fiscal year terminating January 31, 1940. No single year or group of years is in itself typical of normal earnings of the business for the base period, but appropriate adjustments may be made to reflect normal base period conditions. We have selected the group of years from 1924 to 1930, inclusive, as our starting point, because they require the least adjustment for the purpose of relating them to normal base period conditions. We have, according to our own best judgment, adjusted both sales and profit ratios for this purpose. We have also adjusted profit ratios to reflect reasonable salaries of partners to the extent supported by the record. Adjustments have been made giving effect to the elements of dissension and mismanagement during the base period as disclosed by the record. We have given no effect to petitioner’s contention that profits be reconstructed for the furniture department because the evidence offered in support thereof does not persuade us that a proper reconstruction can be made. After careful consideration, and after making adjustments as above indicated, we have determined reconstructed average sales for the base period in the amount of $737,300, and have applied thereto a profit ratio of 3.35 per cent. We have rounded out the result and have fixed constructive average base period net income in the amount of $24,700. We are not required to determine this amount with mathematical exactness (Danco Co., 17 T. C. 1493) and we do not suggest that we have accomplished precision where precision is impossible. Reviewed by the Special Division. Decisions will be entered wider Buie 50. For our present purposes, the drought and the Insect infestation are considered together as a single factor. They both affected petitioner’s operations through curtailment of farm income and a reduction of the purchasing power of petitioner’s customers.